United States District Court
Middle District of Florida
Tampa Division

**BRITTNEY FOBBS,**

*Plaintiff,*

v.                                                                 No. 8:24-cv-1387-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

*Defendant.*

# Order

Brittney Fobbs challenges the Commissioner of Social Security's decision denying her application for supplemental security income. Doc. 1. The Administrative Law Judge (ALJ) summarizes the general law in the decision, Tr. 17–28, and the parties summarize the procedural history and pertinent evidence in their briefs, Docs. 21, 23.

A court may enter "a judgment affirming, modifying, or reversing" a decision by the Commissioner. 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) (incorporating the judicial-review provision into provisions for supplemental security income). The court reviews de novo whether the Commissioner correctly applied the law. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). But the Commissioner's "findings … as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoted authority omitted). Even if the court "would have reached

a different result[,] and even if a preponderance of the evidence weighs against the Commissioner's decision, [the court] must still affirm if the ALJ's decision clears the low evidentiary bar." *Flowers v. Comm'r, Soc. Sec. Admin.*, 97 F.4th 1300, 1309 (11th Cir. 2024).

Social Security Ruling 15-1p provides guidance on evaluating cases involving interstitial cystitis (IC), "a complex genitourinary disorder involving recurring pain or discomfort in the bladder and pelvic region," 2015 WL 1292257, at *1–3 (Mar. 18, 2015). The ruling explains that "[p]eople who have IC may report an urgent need to urinate (urgency) or a frequent need to urinate (frequency), or both" and that "[s]ome people with severe cases of IC may need to void as often as 60 times per day, including nighttime urinary frequency (nocturia) with associated sleep disruption." SSR 15-1p, 2015 WL 1292257, at *4. The ruling explains that, when evaluating the intensity and persistence of symptoms and determining the extent to which they limit a claimant's functional capacity for work, the Social Security Administration (SSA) considers all record evidence, including the claimant's daily activities, medications or other treatments used to alleviate symptoms, the nature and frequency of attempts to get medical treatment for the symptoms, and statements by others about the symptoms. *Id.* at *7. The ruling explains that the SSA "will make a finding about the extent to which symptoms, such as pain, affect [the claimant's] capacity to perform basic work activities." *Id.*

Fobbs argues that the ALJ failed to evaluate her statements about symptoms and functional limitations associated with her IC in accordance with SSR 15-1p, contending that the ALJ only mentioned that, according to a treatment record, her "UTIs are finally under control." Doc. 21 at 5 (citing Tr. 20).

2

In a disability report completed when the pertinent period began (November 2021, *see* Tr. 28), Fobbs alleged that she suffered from eighteen conditions that limited her ability to work, including IC, Tr. 322. In a pain questionnaire completed the following month (December 2021), Fobbs alleged that IC and fourteen other conditions caused her pain throughout her body, all day, every day. Tr. 336–37. In a functional report also completed that month (December 2021), she said nothing about IC except that IC, anxiety, neuropathy, and dry mouth affect her sleep. Tr. 344–51.

About seven months later (July 2022), Fobbs's lawyer sent the Office of Disability Determinations earlier statements from Fobbs's husband, mother, and friends. Tr. 362–66. They convey that Fobbs experiences pain that limits her ability to work but say nothing about IC or any need for Fobbs to urgently or frequently use the restroom. *See* Tr. 362–66.

In a functional report completed later that year (November 2022), Fobbs said nothing about IC specifically, *see* Tr. 379–86, but, asked if her conditions affect her sleep, she answered that she has to use the bathroom several times a night and wakes up because of dry mouth and tingling in her hands and feet, Tr. 380. In a separate statement, she described how each alleged condition affected her. Tr. 390–91. She said that IC "causes pain in [her] lower belly filling [sic] of having to urinate and pressure all the time." Tr. 390.

The following month (December 2022), at the initial level, state agency medical consultant Phillip Matar, M.D., considered Fobbs's IC and other impairments and found that she could perform a range of work at the light exertional level subject to additional postural and environmental limitations. Tr. 159–68.

The following year (June 2023), at the reconsideration level, state agency medical consultant Gary Smith, M.D., considered Fobbs's IC and other impairments and, like Dr. Matar, found that she could perform a range of work at the light exertional level subject to additional postural and environmental limitations. Tr. 170–81.

In a disability report completed the next month (July 2023), Fobbs alleged that, since her last report, her conditions had worsened or developed, explaining: "vertigo – causes dizziness, spinning, feel like im [sic] under water, sweating, eye blurriness and nausea, diabet[e]s – increase in urination, very tired, numbness and tingling of hands and fee[t]. [IC] of bladder, pulvic [sic] pain urge to urinate, waking up at night, increase in UTI[s], making anxiety worse." Tr. 432.

Notes from a visit to Women's Care a few months later (September 2023) for a vulvar rash and breast pain include that, "[Fobbs] was actually doing well without issues other than her usual IC symptoms until recently when she thought she had a UTI, saw her urologist[,] and had a negative urine culture." Tr. 1975.

At the administrative hearing about three months later (January 9, 2024), Fobbs testified that she spends "[m]ost [of] the time in the bathroom, in and out of the bathroom, from the couch to the bed, to standing up, to back to the bathroom." Tr. 46. The ALJ asked her if this was "a new thing"; she answered, "No, that's been going on for a couple of years with … one of my autoimmune things … making it worse." Tr. 46. The ALJ commented, "I don't remember you discussing it in 2021. So, is it—are you talking about it's a recent thing, like 2023?" Tr. 46. She answered, "I think it's—I don't—no, it's always been there. It's—and it's—it's [IC] of the bladder, so it's an autoimmune. And—

4

and then—and they also say it's—it's called a lichen sclerosus—… that I think that I—they're pretty sure I have that, too, now." Tr. 46. The ALJ observed, "I'm just saying it wasn't mentioned before. So, I'm just asking when did it become an issue that you've all of a sudden go from the bathroom to the couch?" Tr. 47. She answered, "Oh, I've had that since—oh my gosh—at least a couple of years, but the—my urologist recently—it's been over a year, though, that's [sic] said that I have this. Been at least a year." Tr. 47. She testified that after she wakes up in the morning to be with her child, she tries "to eat something and then from there, usually within 20 minutes," has "to use the bathroom[.]" Tr. 47.

Fobbs's lawyer commented that she knew that Fobbs had seen a urologist ("Dr. Shaw") in the past and asked her when she had seen him again "for the bladder issues." Tr. 50. Fobbs answered, "I'm trying to think back because I—I've actually—it's—it's very hard to diagnose, so I've had all—all my autoimmunes together, which is like four of them. They all work differently, so I didn't even know I've had it. It's been at least, I think, two years for the—in—in the bladder issue. … But it's progressed and gotten worse." Tr. 50.

Fobbs's lawyer asked Fobbs, "Does it sound right that you saw the doctor in 2020, and then returned in July of 2022?" Tr. 50. Fobbs answered, "Yes, that's probably right, yes." Tr. 50. Fobbs added, "It—it—mostly I would talk to him on the phone, too, because of, you know, no … work because he just would have me go urin[ate] in a cup to see if I had a bladder infection, and then this is what you did and really—and then my OB doctor, too, um-hum." Tr. 50; *see also* Tr. 461 (July 2022 letter from Fobbs's lawyer to the Office of Disability Determinations conveying a statement from Fobbs: "I had a telehealth call will [sic] Dr. Shaw (urologist) last Thursday. He suggested I start physical therapy

5

for the leaky bladder. This will not cure the [IC]. I will start therapy August 31st[.]"). Fobbs's lawyer asked Fobbs, "So, just to, you know, clarify this, how frequently are you having to use the restroom during the day?" Tr. 51. She answered, "Oh, through the day, just the daytime alone, no waking up through the night, it—I would say at least ten times a day at—at least. That's not including like waking up through the night, and that's just daytime." Tr. 51.

Fobbs testified that she had lost weight, but the weight loss had not helped "the bladder thing or anything." Tr. 56–57. Her lawyer asked her, "Is it constantly irritating you, the bladder issue, like the itching or pain, right?" Tr. 57. She answered, "Um-hum, yes, because also—so, he did diagnose me with this L-I-C-H-E-N sclerosus which that's on top of it making it worse with the [IC], on top of with that, which she was saying—what she's sure I have, too, because it's another autoimmune." Tr. 57. Her lawyer asked her, "Right, then I'm just wondering if it's something that is constantly distracting you or not really – " Tr. 57. She answered, "Constantly—constantly, yes." Tr. 57.

In the decision, entered a few weeks after the hearing (January 23, 2024), the ALJ found that Fobbs's IC was non-severe. Tr. 19–20. The ALJ found "insufficient documentation of more than minimal functional limitations resulting from" IC, Tr. 19, and further found that Fobbs's allegations about urinary incontinence and other symptoms "are not fully supported by the record, particularly with regard to severity or frequency." Tr. 20. The ALJ added, "I note [that Fobbs]'s medical provider recently noted [that her] urinary tract infections 'are finally under control.'" Tr. 20 (citing Tr. 2004, an October 2023 treatment record).

The ALJ stated that she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the

6

objective medical evidence and other evidence," the medical opinions, and the prior administrative medical findings. Tr. 23. The ALJ found that Fobbs's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 23–24. The ALJ found:

> As for [Fobbs]'s statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the record [and] … are not fully supported by the objective and longitudinal medical evidence. The severity of [Fobbs]'s subjective pain and functional limitations are out of proportion to the objective findings and recommended course of treatment.

Tr. 24.

The ALJ observed that "much of the record" was for a previous period during which Fobbs had been found not disabled. Tr. 24. The ALJ observed that Fobbs's "treating sources [had] observed her to be neurologically intact." Tr. 25. The ALJ observed that Fobbs had suffered a "cerebrovascular accident" in 2017, but since then, she "has shown few indications that she has any particular functional loss because of this." Tr. 25. The ALJ observed that "[h]er medical provider specifically noted she has no residual effects from the incident." Tr. 25. The ALJ observed that Fobbs's "neurological examinations were normal." Tr. 25.

The ALJ observed that Fobbs had undergone "an independent medical examination with Dr. Peter Penico, M.D.," described the doctor's findings, and found, "These are not disabling findings." Tr. 25–26. The ALJ observed that the state medical experts, Drs. Matar and Smith, "believe [that Fobbs] can perform work at the light exertional level with some additional postural

7

limitations, although Dr. Smith also believes [that she] has some environmental limitations." Tr. 26. The ALJ found that "the more limiting opinion of Dr. Smith" was "more persuasive, although both opinions are persuasive[,] … because they are consistent with and supported by the medical evidence of record, particularly the findings upon physical examination." Tr. 26.

The ALJ stated that she had "considered the observations of non-medical sources and third parties in relation to how the claimant's impairments affect her ability to work," including Fobbs's mother, and found that, for the most part, they merely repeat Fobbs's claims about the nature and severity of her symptoms and conflict with the medical evidence. Tr. 26.

The ALJ concluded, "I recognize [Fobbs]'s impairments limit her ability to work—just not as much as alleged. … [T]he[] limitations adequately accommodate [her] impairments." Tr. 26.

Fobbs cites parts of the record pertaining to her IC. Doc. 21 at 5–6; *see* Tr. 655 (9/22/2020; statement that Fobbs was recently diagnosed with IC; "Agree with plan to minimize antibiotic[s] for urinary symptoms unless has definitive evidence of UTI."); Tr. 1004 (11/23/2020; assessing hematuria due to acute cystitis; "Urine culture sent due to trace blood and frequency of urination. Will call with results of UTI."); Tr. 1111 (10/21/2021; "IBS and [IC] have been bad[.]"); Tr. 1682 (5/18/2022; "History of [IC] which has not been an issue for a while. Thinks it might be flaring, for the past 14 days she has a pressure in her pelvis and urinary urgency. Feels like she just wants to hold her legs together and curl up. The vulva and vaginal burn as well. Has frequency. Has used boric acid every other night x 2 nights this week. Has called her urologist, used to be on Amitryptilline but now also on [L]exapro and

8

wants to know if she can take these together."); Tr. 1213 (7/20/2022; "[IC]: Symptoms: pressure in the bladder, sometimes feels like the bladder is 'on fire'. Current management: Elmiron 100mg, 1 tab daily and Duloxetine 30 mg daily, initiated 07/02/2020."); Tr. 1636 (12/13/2022; reporting that she has IC); Tr. 1939–40 (1/27/2023; reporting "leakage with cough, laugh"; prescribed Myrbetriq for "[u]rinary frequency"); Tr. 1910–13 (4/20/2023; noting active IC, urinary and stress incontinence, and that "UTIs have cleared"); Tr. 1858 (5/18/2023, 5/22/2023; IC "acting up"); Tr. 2004 (10/24/2023; "47[-]year[-]old here for follow[-]up on chronic vulvovaginitis. Has struggled with recurrent UTIs this past year[,] but they are finally under control. History of IC who has not had UTIs in many years until end of last year after getting a steroid injection for asthma[.]").

The Commissioner cites parts of the record in which Fobbs denied symptoms relating to urinary frequency and urgency:

> [Fobbs]'s medical records document inconsistent reports of urinary frequency and urgency; there is no continuous, 12-month period in which [she] reported those symptoms. Rather, she denied such symptoms during most medical appointments (see e.g., [Tr.] 1151 [12/14/2021], [Tr.] 1313 [10/12/2021], [Tr.] 1319 [1/27/2022], [Tr.] 1322 [5/31/2022], [Tr.] 1328 [7/26/2022], [Tr.] 1333 [8/16/2022], [Tr.] 1337 [8/25/2022], [Tr.] 1341 [9/8/2022], [Tr.] 1345 [10/5/2022], [Tr.] 1616 [9/8/2022], [Tr.] 1620 [10/5/2022], [Tr.] 1624 [11/1/2022], [Tr.] 1628 [11/3/2022], [Tr.] 1632 [12/8/2022], [Tr.] 1645 [12/13/2022], [Tr.] 1677 [10/7/2022], [Tr.] 1690 [2/9/2022], [Tr.] 1719 [10/12/2021], [Tr.] 1722 [12/30/2021], [Tr.] 1725 [1/27/2022], [Tr.] 1728 [5/31/2022], [Tr.] 1735 [7/26/2022], [Tr.] 1739 [8/16/2022], [Tr.] 1743 [8/25/2022], [Tr.] 1747 [9/8/2022], [Tr.] 1751 [10/5/2022], [Tr.] 1759 [11/3/2022], [Tr.] 1763 [12/8/2022], [Tr.] 1771 [2/16/2023], [Tr.] 1775 [2/23/2023], [Tr.] 1786 [3/6/2023], [Tr.] 1882 [3/1/2023], [Tr.] 1891 [3/30/2023], [Tr.] 190[1] [6/14/2023], [Tr.] 1925 [6/14/2023]).[*]

---

[*]Records with the same date are duplicates.

Doc. 23 at 9–10. The Commissioner further observes that no treating or examining medical source assessed any specific limitation caused by Fobbs's IC. Doc. 23 at 10.

Fobbs fails to show a reversible error or the absence of substantial evidence supporting the ALJ's findings. The ALJ followed the law by evaluating Fobb's IC, determining its severity, and explaining the findings. Although the ALJ did not describe all the medical evidence or Fobbs's testimony, the ALJ provided enough detail to make clear that she had considered the record and that the record did not support either a finding that Fobbs's IC was severe or that the RFC had to include limitations to address any IC symptoms. *See* Tr. 17–28. The evidence described in this order satisfies the substantial-evidence threshold to support the ALJ's findings.

The Commissioner's decision is **affirmed**. The clerk is directed to enter judgment for the Commissioner of Social Security and against Brittney Fobbs and close the file.

**Ordered** in Jacksonville, Florida on September 10, 2025.

*Patricia D. Barksdale*
Patricia D. Barksdale
*United States Magistrate Judge*